UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JORDAN J. BRAUER,

                                          Plaintiff,                  Case # 17-CV-1288-FPG

v.                                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.

**INTRODUCTION**

Plaintiff Jordan J. Brauer brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 12. For the reasons that follow, the Commissioner's motion is DENIED, Brauer's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

In September 2013, Brauer protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 251. He alleged disability since April 1, 2013 due to bilateral clubfeet, ankle foot fusion, anxiety, and sensory issues (autism spectrum). Tr. 268. On May 23, 2016, Brauer and a vocational expert ("VE") testified at a video hearing before Administrative

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 6.

Law Judge Melissa Lin Jones ("the ALJ"). Tr. 99. On June 23, 2016, the ALJ issued a decision finding that Brauer was not disabled. Tr. 10-19. On October 10, 2017, the Appeals Council denied Brauer's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I. **The ALJ's Decision**

The ALJ analyzed Brauer's claim for benefits under the process described above. At step one, the ALJ found that Brauer had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Brauer had one severe impairment: reconstructive surgery of a weight-bearing joint. Tr. 12. At step three, the ALJ found that this severe impairment did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Brauer retains the RFC to perform sedentary work[2] with additional limitations. *Id.* Specifically, the ALJ found that Brauer can perform unskilled work; can rarely climb ramps or stairs; cannot climb ladders, ropes, or scaffolds; cannot use right foot controls or balance; can occasionally kneel, crouch, or crawl; and cannot work at unprotected heights or operate a motor vehicle. *Id.*

At step four, the ALJ found that Brauer cannot perform his past relevant work. Tr. 17. At step five, the ALJ relied on the VE's testimony and found that Brauer can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 17-18. Specifically, the VE testified that Brauer can work as a call-out operator, an envelope addresser, and a food and beverage order clerk. Tr. 18. Accordingly, the ALJ concluded that Brauer was not disabled. Tr. 18-19.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

4

## II. Analysis

Brauer argues that remand is required on three grounds. However, because the Court concludes that remand is required on one of the grounds that Brauer raises, it need not address his remaining arguments. Specifically, Brauer contends that the RFC assessment lacks substantial evidence and contains errors of law. *See* ECF No. 8-1 at 18-20. The Court agrees.

### a. Facts

Brauer was born in February 1989 and has a history of congenital club feet. Tr. 332. He had corrective surgery as an infant and had "done well" until 2011, when he began having pain in his right foot. *Id.* Then, in early April 2013, Brauer injured his right ankle while playing hockey. Tr. 349. He noticed swelling and bruising in his foot and ankle and had pain while standing or walking. *Id.* An x-ray revealed no fracture in the area but did show a dislocation between the mid- and hind-foot, a possible congenital deformity of the talar and navicular bones, and a large joint effusion. Tr. 356. An MRI showed progressive arthritic and erosive changes in the talus bone. Tr. 363.

One month after the injury, Brauer reported sharp pain when he put weight on his right foot and he felt like his condition was "getting worse." Tr. 369. He used crutches to ambulate. *Id.* In a letter describing his work restrictions, Liliya Kulik—a Physician's Assistant—opined that Brauer could return to work, except that he could not stand or walk for more than thirty minutes, could not lift anything over ten pounds, and must use an air cast and crutches. Tr. 372.

In summer 2013, Brauer met with Bernhard Rohrbacher, M.D., an orthopedic surgeon, to evaluate his continuing ankle and foot pain. Dr. Rohrbacher diagnosed Brauer with osteoarthritis in his right foot. Tr. 332. In September 2013, Brauer had bone-fusion and bone-graft surgery to correct those problems. Tr. 332-34. Shortly after the surgery, Brauer reported that his pain was

5

well controlled with medication, but he stated that the swelling in his right foot had not improved, and he had limited range of motion and ability to move his toes. Tr. 342. Dr. Rohrbacher recommended that Brauer avoid bearing weight on his right foot. *Id.*

In January 2014, Brauer met with Abrar Siddiqui, M.D., for a consultative examination. Tr. 393-97. He complained of sharp, aching pain in his right ankle ("8/10 in intensity"), which increased with walking and weightbearing. Tr. 393. At the examination, Brauer used a crutch to ambulate. Tr. 394. Dr. Siddiqui opined that Brauer had "mild to moderate limitations" in his ability to stand but that his recent surgery contributed to that limitation. Tr. 396. By contrast, in February 2014, Dr. Rohrbacher opined that, since his hockey injury, Brauer had been "totally disabled" due to his "congenital [club] feet deformities." Tr. 404.

After the bone-fusion surgery, Brauer continued to have right ankle pain and the deformities in his right foot began causing difficulty with his gait. Tr. 482. In August 2014, Dr. Rohrbacher performed a second surgery, whereby a portion of bone was removed and screws were inserted. Tr. 483.

In October 2014, Dr. Rohrbacher opined that Brauer was very limited in his abilities to walk, stand, and sit. Tr. 498. He estimated that Brauer would be totally disabled for four to six months. *Id.*

It appears that Brauer continued to experience pain following the second surgery. In January 2015, Brauer complained of pain along the outside border of his right foot and had begun "walking on the outside of his heel." Tr. 484. Dr. Rohrbacher diagnosed Brauer with a right "cavovarus foot deformity" and performed a third surgery in an attempt to correct it. Tr. 484-85. As with the second surgery, a portion of bone was removed and screws were inserted. Tr. 485.

In May and June 2015, Brauer attended physical therapy for six sessions. Brauer complained of right ankle pain (estimated at "5/10") and stiffness. Tr. 417. The physical therapist noted that Brauer had a right leg limp, pain when moving his ankle, and "deficits in strength, [range of motion], balance, and functional mobility." *Id.*

In July 2015, Brauer met with Jennifer Gurske-Deperio, M.D., complaining of right ankle pain. Tr. 454. He walked without an assistive device, but he had an antalgic gait favoring his right ankle and walked "on the lateral border of the right foot." Tr. 455. Brauer reported that he developed hypersensitivity in his right foot and ankle following his third surgery, and that he had pain "throughout his entire ankle." Tr. 454. He stated that his pain was "5/10" if he did not put weight on it and "7" to "10" out of 10 if he did. *Id.* Dr. Gurske-Deperio diagnosed him with residual equinocavovarus deformity and reflex sympathetic dystrophy.[3] The latter condition is "characterized by severe burning pain, most often affecting one of the extremities (arms, legs, hands, or feet)."[4] Treatment options included removing the hardware from Brauer's previous surgeries and performing an ankle fusion surgery. Tr. 456. Alternatively, Brauer could elect "below the knee amputation." *Id.* Non-invasive options included custom pain creams and braces. *Id.* At that visit, Brauer received a prescription for pain cream, a referral to a specialist in reflex sympathetic dystrophy, and compression stockings. *Id.*

In October 2015, Brauer returned to Dr. Gurske-Deperio. She noted that Brauer complained of severe pain, was "unhappy with the outcome of" his previous surgeries with Dr. Rohrbacher, and "has even requested amputation of the leg." Tr. 458. Brauer agreed to have

---

[3] Dr. Gurske-Deperio appears to have inadvertently stated that these conditions were present in Brauer's left leg, but the Commissioner agrees that this was a mere "transcription error." ECF No. 12-1 at 9 n.3.

[4] *Reflex Sympathetic Dystrophy (RSD) Syndrome*, NEW YORK DEPARTMENT OF HEALTH (February 2015), https://www.health.ny.gov/diseases/chronic/reflex_sympathetic/ (last visited June 19, 2019).

another surgery to remove the hardware that had been inserted previously. Tr. 460. A few weeks later, Dr. Gurske-Deperio performed the surgery. Tr. 462-63.

Approximately six months after the surgery, Brauer met with Dr. Gurske-Deperio and reported that he felt "no change" since the surgery. Tr. 500. He stated that if "it was up to him he would consider amputation of the right foot." *Id.* Ultimately, he decided to have ankle fusion surgery, which Dr. Gurske-Deperio performed in April 2016. Tr. 495.

At the May 23, 2016 hearing, Brauer testified that the pain and numbness in his right foot and ankle persisted through his many surgeries. Tr. 135. Indeed, it worsened: particularly after the second surgery, he began to have more significant pain, numbness, tingling, and burning sensations. *Id.* Even with a crutch or assistive device, he can only walk for about thirty minutes, at which point the pain, numbness, and swelling intensifies to an unbearable level. Tr. 139. When he sits, he still has pain and his right leg constantly shakes. Tr. 142. Brauer also testified that if he goes grocery shopping, he will need to rest for the remainder of the day because of the severe pain. Tr. 147.

In her decision, the ALJ appears to have attributed Brauer's difficulties with lifting, walking, and standing to his post-operative condition after his surgeries, and she concluded that Brauer had "healed or [was] in the process of healing from [those] surgeries." Tr. 16-17. On that basis, she determined that Brauer could perform sedentary work. Tr. 16. The ALJ also included non-exertional limitations to account for his "decreased mobility and flexibility on account of his [right] ankle." *Id.* In reaching her decision, the ALJ primarily relied on (1) Brauer's x-rays and MRIs, from which she inferred that Brauer was successfully healing from his surgeries; and (2) evidence showing that Brauer occasionally went to appointments without an assistive device. *See* Tr. 15-17. The ALJ gave little weight to the medical opinions in the record. Tr. 16-17.

### b. Analysis

The Court concludes that remand is appropriate because the ALJ's RFC determination was erroneous.

"RFC is defined as 'what an individual can still do despite his or her limitations.'" *Santiago v. Berryhill*, No. 16-CV-6459, 2017 WL 2728584, at *3 (W.D.N.Y. June 26, 2017). "To determine a claimant's RFC the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Id.* But the Court must confine its review to the ALJ's rationale; it is "not permitted to accept the Commissioner's post-hoc rationalizations for the ALJ's determination." *Marthe v. Colvin*, No. 15-CV-6436, 2016 WL 3514126, at *8 (W.D.N.Y. June 28, 2016).

As an initial matter, it is important to highlight the treatment that Brauer received for his right leg. It is undisputed that Brauer has a history of congenital club feet and that the condition of his right leg began to worsen after his hockey injury in April 2013. Nor can it be disputed that, over the course of less than three years, Brauer had *five* surgeries on his right leg to correct deformities and relieve his pain. These cannot be characterized as non-invasive surgeries—they involved the removal and fusing of bone, as well as the insertion of screws. *See, e.g.*, Tr. 483. Moreover, by 2015, Brauer and Dr. Gurske-Deperio were considering "below the knee amputation" as a treatment option. Tr. 456. This evidence ought to have weighed heavily in Brauer's favor. S*ee* SSR 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996) ("Persistent attempts by the individual to obtain relief of pain or other symptoms . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's

allegations of intense and persistent symptoms."). Nevertheless, the ALJ found that Brauer's statements of debilitating pain were not "entirely consistent" with the evidence in the record. Tr. 15. But the reasons the ALJ articulated were erroneous and cannot constitute substantial evidence.

First, the ALJ interpreted the x-rays and MRIs to draw her own conclusions about Brauer's condition and symptoms. Specifically, the ALJ construed the various radiologic studies to mean that Brauer's right foot and ankle healed successfully after his surgeries. Tr. 16-17. She then inferred from that healing that Brauer did not have the functional limitations that he claimed. *See id.* While the first conclusion might be a permissible inference from those studies, the second is not.

As a layperson, the ALJ does not have the medical competence necessary to determine how Brauer's functional limitations would be affected as his foot healed after his surgeries, especially given the complex medical history associated with his right foot. Rather, a medical source's opinion would be necessary to translate the radiologic reports into an assessment of Brauer's functional capacity to stand, walk, sit, and lift. *See, e.g.*, *Alessi v. Colvin*, No. 14-CV-7220, 2015 WL 8481883, at *6 (E.D.N.Y. Dec. 9, 2015) ("[T]he ALJ is not a medical professional who can interpret the MRIs to assess Plaintiff's RFC." ); *Harrison v. Colvin*, No. 15-CV-35, 2016 WL 1358377, at *13 (N.D.N.Y. Mar. 15, 2016) ("It is inappropriate for an ALJ to reach his conclusion as to a plaintiff's RFC through [his] own interpretation of various MRIs and x-ray reports contained in the treatment records." (internal quotation marks omitted)). Indeed, it is difficult to discern how the ALJ reconciled her interpretation of the radiologic studies with the invasive surgeries that Brauer's physicians continued to recommend and perform.[5]

---

[5] Even if the ALJ's interpretation was permissible, she erred in relying on objective medical evidence to discount Brauer's subjective complaints. Dr. Gurske-Deperio diagnosed Brauer with reflex sympathetic dystrophy. Tr. 455. One characteristic of that syndrome is that "the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." SSR 03-02p, 68 Fed. Reg. 59971,

10

Second, the ALJ appears to have mischaracterized the evidence concerning Brauer's ability to walk without an assistive device. "It is well-settled that while an ALJ need not mention every item of testimony presented or reconcile explicitly every conflicting shred of medical testimony, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability." *Seignious v. Colvin*, No. 15-CV-6065, 2016 WL 96219, at *4 (W.D.N.Y. Jan. 8, 2016) (internal quotation marks, brackets, and citation omitted). Here, the ALJ stated that Brauer had the "ability to ambulate at times without an assistive device." Tr. 17. However, the records on which the ALJ relies show that, far from having a normal ability to walk, Brauer had an abnormal gait consistent with his complaints of severe pain in his right foot. At a July 2015 appointment, Brauer did not use an assistive device but had an "antalgic [gait] favoring [his] right ankle." Tr. 455. To ambulate, Brauer walked "on the lateral border of [his] right foot." *Id.* Similarly, in March 2016, Brauer attended an appointment without an assistive device but was "still walking on the outside of his right foot." Tr. 500. In other words, Brauer may have been walking in an abnormal manner to shift his weight off of certain parts of his right foot and ankle. *See, e.g.*, *Escarcega v. Apfel*, No. 99-CV-1039, 2001 WL 37125247, at *4 (D.N.M. Mar. 21, 2001). On its face, the ALJ's decision therefore mischaracterizes the evidence insofar as it suggests that Brauer ambulated normally without an assistive device.

Accordingly, remand for further proceedings is required. Given Brauer's diagnoses and medical history, the Commissioner should employ one of the several methods available to ensure that there is a competent medical opinion in the record—for example, by requesting additional information from a treating physician, obtaining another consultative examination, or requesting

---

59972 (Oct. 20, 2003). Thus, "the lack of supporting diagnostic and clinical findings is to be expected and may not provide a sound basis for rejecting a claimant's complaints of severe pain." *Cooley v. Colvin*, No. 12-CV-1284, 2013 WL 12224205, at *4 (N.D.N.Y. Oct. 15, 2013).

an opinion from a medical expert. *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016). This may help to avoid a situation in which the ALJ is left without guidance from a medical source on Brauer's impairments and the limitations they cause.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 15, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court